Price, J.
The petition filed in the court of common pleas, did not ask for the vacation of Clay street between Front street and the Ohio river, but of a strip fourteen feet in width on one side of Clay street between Front street and the Ohio river. The evident effect of granting the prayer of the petition was to narrow said- street between those points, from sixty-six to fifty-two feet in width, and the question is, had the court authority to make such an order*? This question was raised by demurrer to the petition, and the ruling upon it by the court of common pleas was assigned for error in the circuit court, and its judgment upon the question is now challenged in this court. If we decide that the demurrer should have been sustained, other matters in the record and discussed by counsel need not be considered.
The only authority conferred on the court of common pleas, to either establish or vacate a street or *211 alley, within a hamlet or municipal corporation, is found in section 1536-148 (section 2655), Revised Statutes, which reads:
‘ ‘ On petition filed in the court of common pleas by any person owning a lot in any city or in an incorporated or unincorporated hamlet or village, for the establishment or vacation of a street or alley in the immediate vicinity of such lot, the court upon hearing, and being satisfied that it will conduce to the general interests of such city, hamlet or village, may declare such' street or alley established or ■vacated; but the remedy shall be in addition to those prescribed in this title.”
The nest section prescribes the character of notice to be given of the filing and pendency of the petition; and provides for the right of any person other than the petitioner, who owns a lot in the immediate vicinity of the street or alley prayed to be vacated or established, to claim damages, and that on such claim the court may hear proof in reference thereto and render judgment against the petitioner for such damages as it may thinh just, and that a jury may be demanded as in other cases, etc.
It is well enough to trace this legislation, as it will afford aid in its construction when compared' with other legislation authorizing the councils of municipal corporations to establish, vacate or narrow streets and alleys.
The first provision on the subject to which we have access, was made in 1828, in “an act to provide for the vacation of town plats, and for other purposes.” This was amended March 5, 1839, to read in part as follows:
“Section 1. That on petition filed in the court of common pleas of any county in this state by any *212 person or persons owning any lot or lots in any town or city in the said county, praying that any alley or alleys, street or < streets, in the immediate vicinity of such lot or lots, may be established or vacated, the said court may, and they are hereby authorized, upon hearing and being satisfied that it will conduce to the general interests of such town or city, to declare such alley or alleys, street or streets, established or vacated.” See 37 O. L., 44.
The next section (2) provides for the mode of procedure, the right of another lot owner to claim damages, etc., in all respects similar to the mode prescribed in the present statute. Omitting a few surplus words, the act of March 5, 1839, above quoted is present section 1536-148 (2655), Revised Statutes, except that its last clause, “but the remedy shall be in addition to those prescribed in this title,” was not in the old act.
The act'of March 5, 1839, was carried into Swan & Critchfield Statutes, word for word, as found in Volume 2, page 1487.
In 1878 (see 75 O. L., 161) the statutes relating to municipal corporations were revised and amended so as to form a code of municipal law, and section 15, page 391, of that revision is precisely the same as our present statute on the subject, and there, for the first time appears the clause, “but the remedy shall be in addition to those prescribed in this title.” There is significance in this fact when it is seen that the three preceding sections provide “for vacation of streets by council,” thus bringing into juxtaposition the different provisions respecting the vacation of streets and alleys. See sections 12, 13, 14 and 15 of 75 O. L., 390-391.
*213 In 1879, section 15 of the code of 1878 was slightly amended, bnt the change is of no importance here. See 76 O. L., 25.
The same provision, omitting surplus words, is found in the revision of all our statutes in 1880. Thus we have the history of the jurisdiction of the court of common pleas over the establishment or vacation of streets and alleys, and in none of the stages of the legislation in all its past history, do we find authority given the court to narrow a street or alley, unless that authority is included in the word “vacate.” In each was given the power to establish and vacate streets and alleys, and that is the only power vested in the court by the statute on that subject. However, there is authority for narrowing streets and alleys, and it is conferred on the council of a city or village by section 1536-145 (section 2652), Eevised Statutes, which reads in part: “The council of any city or village, on petition by any person owning a lot in the corporation praying that a street or alley in the immediate vicinity of such lot may be vacated or narrowed, or the name thereof changed, may upon hearing and being satisfied that there is good cause for such change of name, vacation or narrowing, that it will not be detrimental to the general interest, and that the same should be made, declare by ordinance such street or alley vacated, narrowed, or the name thereof changed, etc. * * *.”
The next section provides for notice of the filing and prayer of the petition .by six weeks publication.
And section 1546-147 provides that “the order of council vacating or narrowing any street or alley which has been dedicated to public.use by the pro *214 prietor, shall to the extent to which the same is vacated or narrowed, operate as a revocation of the acceptance thereof by the council; but the right of way and easement therein of any lot owner shall not be impaired thereby.”
It is sufficient for the purposes of this case, that we trace the principal features of the above sections back as far as 1853 and to the act of the legislature passed March 11, 1853, and which was amended by section 13 of an act passed April 29, 1854. See 52 O. L., 75. By the original and the amended section, “the city council of any city or incorporated village of this state, on petition filed by any person or persons owning any lot or lots, in any such city or incorporated village, praying that any street or streets, alley or alleys, in the immediate vicinity of such lot or lots, may be vacated or narroived, may, and they are hereby authorized upon hearing and being satisfied that there is good cause for such vacation or narrowing, and that it will not be detrimental to the general interest, and that the same should be made, declare such, street or streets, alley or alleys vacated or narrowed. * * *.”
There was a provision for notice by publication for a certain time before the hearing on the petition. The above section is found in exact terms in the revision by Swan & Critchfield, volume 2, page 1531. It was a part of “ an act to provide for the organization and government of municipal corporations,” passed May 7, 1869, and known therein as section 491. Several sections of that act, including 491, were amended April 18, 1870. See 67 O. L., 78. In the amendment the power to change the name of a street or alley was added. As such, it was carried into the revision of 1880. We find it again with a *215 slight amendment made in 1893. See 90 O. L., 350. In substance, if not literally, we so find it now.
In their origin, and in the different revisions and amendments, the statute authorized the council on proper petition and notice to vacate or • narroiv streets or alleys, and when codification of the statutes for the organization and government of municipal corporations took place, the statutory authority for councils to vacate and narrow streets and alleys was brought in close relation to the statute authorizing a court of common pleas to establish or vacate, streets and alleys. They were kindred provisions from their first inception, and have long ago been brought together as they are now found.
"What is the fair inference to be drawn from the comparison we have made? It is, that from the very first Creation of the authority in the court and in the council of the city or village, to deal with streets and alleys, each tribunal must follow the language. of the statute pertaining to it. One cannot borrow from the other. Nor can authority not expressly conferred be derived by implication. The jurisdiction conferred on the court, is special and the act conferring the jurisdiction must be strictly followed. It is quite clear that if the general assembly ever intended to empower the court of common pleas to narroiv a street or alley, it would have so expressed itself at some time during the past three quarters of a century or more; especially, when it had knowledge that it had given municipal councils that power. It has not been a matter of oversight, but on the contrary it has been, the steady, consistent pursuit of an original purpose. There are some apparent reasons which might be furnished for this, but the statutory reasons alone are sufficient.
*216 It has been suggested, that because the court has power to vacate a street or alley, it may vacate a strip along one side of a street, on the theory that the greater includes the lesser. That axiom is sometimes convenient in summing up mathematical calculations in matters of space or quantity; but it would not be a safe rule to adopt in ascertaining legislative intent, or in measuring the jurisdiction of a court in a special proceeding. If the word alley had been left out of the court section, would it be claimed that the court could vacate an alley, which is less than a street, because the court is authorized to vacate a street. Or, if the word alley had been omitted, would it be claimed that the court could establish an alley, because it can establish a street which is a larger thoroughfare?
We believe the power to narrow a street is left alone with the council because it is entrusted with the care and control of the streets and alleys and other public ways of the city or village, and it is better qualified locally to determine when it is proper to narrow an existing street. Its action in so doing, leaves to the abutting owner his easement in the vacated portion, while the narrowing by the court, if it had such power under the guise of vacating, would take the easement from him by assessing damages.
Therefore, when the court orders vacation of a street or alley, it must be from side to side, or the width of the street. This does not mean that the street or alley must be vacated its entire length, but the entire width, of such part of the street as should be vacated, under the terms and prayer of the petition.
Applying our meaning to this case, the court was empowered to vacate Clay street between Front *217 street and the Ohio river, bnt not empowered to narrow the street by vacating a strip along one side of the same.
Counsel for defendant in error cite and rely on Matter of Henry Street, 123 Pa. St., 346; In re Swanson Street, 163 Pa. St., 323; City of Mt. Carmel v. Shaw, 155 Ill., 37. In the matter of Henry Street, supra, the proceeding was to vacate a street, not to narrow one. The petitioners asked vacation of the street in its entirety and the question here was in no way involved. The same may be said of In re Swanson Street, supra, except that the petition asked to vacate a part of a certain street (Swanson street) in Philadelphia lying between Washington avenue and Prime street. The question raised was, whether under a statute authorizing the vacation of a street or road, a part of the same may be vacated, and it was held that the part between said avenue and Prime street could be vacated. On • page 326 in the opinion of the court, the statute of that state is quoted as follows: “Whenever any private or public lane, alley, road or highway shall, by reason of forming town plats or otherwise, become useless to the public, etc. * * * And upon hearing all parties interested, it shall be lawful for the court to decree the vacation of any such lane, alley, street or highway.” Continuing, that court said: “But it does not follow from this that a power to vacate part of a road cannot be deduced from legislation which gives power to vacate the whole of it. In all ordinary circumstances the power to do a.greater act includes the power to do the lesser act, which is part of the greater. * * * The statutory condition upon which the power is conferred is the same in both *218 cases, to-wit ‘whenever the same shall become useless to the public and those having lands bounding thereon.’ This condition may become true of a part, as well as of the whole of a long public road; .or a long street of a city. When it occurs in a city, the vacation of the useless portion may be accomplished with little or no inconvenience to the property owners on the remaining portion of the principal street, because there are always crossing streets at short distances apart, through which free communication can be had with all the streets. ’ ’
It is plain that the right to narrow a street was not involved. The holding is that under the statute of Pennsylvania quoted above, the court could vacate a part of a street between cross-streets. We have said as much for our statute, that it was within the statutory jurisdiction of the court of common pleas on a proper petition, to vacate Clay street its entire width between Front street and the Ohio river, but that the power to narrow as prayed for in this case, did not exist.
The City of Mt. Carmel, supra, presents a very different case. It involved the narrowing and changing of a street by the municipal authorities, and the supreme court of Illinois held on that subject, that, “under the power given by a statute to a city to vacate streets, it may vacate a strip upon each side of a street so as to narrow it, where the purpose of narrowing is not to benefit private owners, but because it is deemed that so great a width of street is not required for public use.” The powers conferred upon the municipal authorities of that state, in reference to streets, are also very broad; but in this state the legislature has expressly authorized councils to narrow streets and alleys, and the *219 ■decision is not relevant here where we are considering the limited jurisdiction of .the court of common pleas.
The demurrer to the petition should have been sustained.
The judgments of the circuit and common pleas courts are reversed and the original petition is dismissed.

Reversed.

Shauck, C. J., Crew, Spear and Davis, JJ., concur.